UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
DONNA M. CHISOLM-MITCHELL and
DAVID A. CHISOLM-MITCHELL,  **MEMORANDUM & ORDER**
  20-CV-3434 (PKC) (LB)

                Plaintiffs,

      - against -

DR. NAJMA AHMED, Advantage Care
Physician; DET. RAYMOND ABEAR, NYPD
112th Precinct,

                Defendants.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiffs Donna M. Chisolm-Mitchell ("Chisolm-Mitchell") and David A. Chisolm-Mitchell ("David") bring this *pro se* action asserting claims pursuant to 42 U.S.C. § 1983, as well as violations of the Health Insurance Portability and Accountability Act ("HIPAA"). The Court grants Chisolm-Mitchell's application to proceed *in forma pauperis* ("IFP"). For the reasons stated below, the Court dismisses (1) certain claims in the Amended Complaint, and all claims as to Defendant Dr. Najma Ahmed, for failure to state a claim upon which relief may be granted; and (2) any purported claim by Plaintiff David, for lack of standing. The Court has construed the Amended Complaint as sufficiently stating claims for § 1983 equal protection and false arrest against Defendant Abear as to Plaintiff Chisolm-Mitchell. In addition, the Court grants Plaintiff Chisolm-Mitchell sixty (60) days to submit a second amended complaint to the extent she can allege additional facts with respect to any of the dismissed claims.

1

## BACKGROUND

**I.   Factual Background**[1]

Plaintiff Chisolm-Mitchell alleges[2] that when her son, Plaintiff David, was between the ages of three to five,[3] he was molested by members of her husband's family. (Amended Complaint ("Am. Compl."), Dkt. 6, at ECF[4] 9.)  It is not clear from the Amended Complaint when Chisolm-Mitchell learned of this abuse, though it appears to have been some years later.  Because Chisolm-Mitchell was a military spouse, she filed a complaint about the abuse with the "CID[5] unit in Baumholder Germany," which "suggested that [Chisolm-Mitchell] and [her] son meet two military

---

[1] For purposes of this Memorandum & Order, the Court assumes the truth of the non-conclusory factual allegations contained within Plaintiffs' Amended Complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[2] The Court notes that the Amended Complaint employs the first-person for Plaintiff Chisolm-Mitchell and appears to have been drafted by her.

[3] David is apparently 18 years old, not a minor, and is or was taking a class at Columbia University. (Am. Compl., Dkt. 6, at ECF 9, 10.)

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] The Court assumes that "CID" refers to "the U.S. Army Criminal Investigation Command, commonly known as CID, [which] is responsible for conducting felony-level criminal investigations in which the Army is, or may be, a party of interest."  U.S. Army Criminal Investigation Command, https://www.cid.army.mil/ (last visited Nov. 10, 2020).  "The United States Army Garrison (USAG) Baumholder, affectionately known as 'the Rock' is set in the wooded hills of the Western Palatinate in the German federal state of Rheinland-Pfalz."  *US Army Garrison Baumholder*, military.com, https://www.military.com/base-guide/us-army-garrison-baumholder (last visited Nov. 10, 2020); *see U.S. Army Garrison Rheinland-Pfalz*, U.S. Army, https://home.army.mil/rheinland-pfalz/index.php/usag-rheinland-pfalz/newcomers/newcomers-baumholder (describing U.S. Army Garrison Rheinland-Pfalz) (last visited Nov. 10, 2020).

personnel at the 112th [Police Precinct] in Forest [H]ills, Queens on or about July 17, 2017."[6] (*Id.*) Plaintiffs subsequently met the personnel at the precinct. (*Id.*) Chisolm-Mitchell was interviewed first, by the two military members along with Defendant Raymond Abear, a detective with the New York City Police Department ("NYPD"). (*Id.*) During the interview, the interviewers informed Chisolm-Mitchell that children who have experienced the type of abuse that her son did were "usually depressed and suicidal"; Defendant Abear said that they would call an ambulance for David if he seemed depressed during the interview. (*Id.*) Chisolm-Mitchell told the interviewers that her son was in therapy and reiterated that she and her son were at the precinct simply in order to file a complaint. (*Id.*)

After speaking to Chisolm-Mitchell, the three interviewers interviewed David. (*Id.*) After twenty minutes, as "the [a]mbulance was head[ing] back to the room where" David was being interviewed, Chisolm-Mitchell ran into the room and asked for David to be released. (*Id.*) Defendant Abear referred to Chisolm-Mitchell by a racial slur, asked another officer to cuff her and send her to the "Psych ward at Elmhurst hospital," and said "this is what we do to n[*****]s." (*Id.*) Abear also told David, again employing a racial slur, that "if he d[id] not go[] to the psych ward[,] they w[ould] drag him down the hall to the ambulance." (*Id.*) Abear also threatened to call the Administration for Children's Services ("ACS") "to ruin [Chisolm-Mitchell] as a n[*****]."[7] (*Id.*) It is not apparent from the Amended Complaint whether Chisolm-Mitchell was charged with a crime and/or sent to a hospital after she was arrested.

---

[6] The Court infers that between the time of Plaintiff Chisolm-Mitchell's complaint to CID in Germany and the interview, Plaintiffs had relocated from the army base in Germany to Queens, New York.

[7] Though the Amended Complaint does not clearly state whether Defendant Abear actually made a call to ACS, Chisolm-Mitchell states later that she was informed by the Board of Education that she needed to provide "a full explanation of the ACS call." (*See* Am. Compl., Dkt. 6, at ECF

Chisolm-Mitchell then reported Defendant Abear to the New York City Civilian Complaint Review Board ("CCRB"). (*Id.* at ECF 10.) She alleges that, in response to her report and without her knowledge, someone "changed [her] medical records to reflect [that] back in 2016[,] [she] was a psychological risk," so that Defendant Abear would be exonerated. (*Id.*) She also asserts that Defendant Najma Ahmed, a physician at Advantage Care Physicians, was told by the NYPD to exonerate Defendant Abear, and that Chisolm-Mitchell was "just a 'n[*****].'"[8] (*Id.*) Chisolm-Mitchell alleges that these events have ruined her reputation and career such that she cannot feed her children. (*Id.* at ECF 12.) She seeks monetary damages and to have her "name cleared so that when applying to any job or [PhD] programs they will see that [she is] not a flight risk." (*Id.*)[9]

## II.   Procedural History

Chisolm-Mitchell filed the initial Complaint in this case in the United States District Court for the Southern District of New York on July 13, 2020. (Dkt. 2, at ECF 8; *see also* Transfer Order, Dkt. 3.) By order dated July 22, 2020, that court transferred the action to this District. (*See* Transfer Order, Dkt. 3.) By order dated August 3, 2020, this Court directed Chisolm-Mitchell to submit an amended IFP application or short statement clarifying her assets and liabilities. (Aug. 3, 2020 Docket Order.) The Court further noted that Chisolm-Mitchell could not represent David in this matter and directed Plaintiffs to file an amended complaint containing David's signature by

---

10.)  The Court infers from this reference that Plaintiffs allege that Defendant Abear did in fact call ACS.

[8] Though somewhat ambiguous, the Court infers that Plaintiffs allege that someone at the NYPD said to Dr. Ahmed that Plaintiff was "just a 'n[*****],'" not that Dr. Ahmed herself made that comment to Chisolm-Mitchell.

[9] The Court notes that the Amended Complaint describes Chisolm-Mitchell's academic background and her son David's mental health history, which do not appear to be relevant to any of Chisolm-Mitchell's or David's claims. (*See id.* at ECF 10.)

August 21, 2020. (*Id.*) Plaintiffs filed the Amended Complaint, which bears both Plaintiffs' signatures, in late August. (*See* Am. Compl., Dkt. 6.)

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "If [a] liberal reading of the complaint 'gives any indication that a valid claim might be stated,' the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, pursuant to the IFP statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

**I.     Section 1983**

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and

federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *Murray v. Orange County*, No. 18-CV-0442 (NSR), 2020 WL 3450782, at *2 (S.D.N.Y. June 23, 2020) (same). In order to state a Section 1983 claim, a plaintiff must allege two essential elements. First, the conduct challenged "must have been committed by a person acting under color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Second, the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.* (quoting *Pitchell*, 13 F.3d at 547); *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

While it is not immediately clear what claims Plaintiffs are alleging, the gravamen of the Amended Complaint appears to be that Chisolm-Mitchell was subjected to racial discrimination by Defendant Abear and potentially other members of the 112th Precinct, potentially resulting in Chisolm-Mitchell's wrongful arrest and other collateral consequences. The Court construes these allegations as Section 1983 claims for a violation of equal protection and for false arrest.

### A.     Equal Protection Violation Against Defendant Abear

"To state a claim for an equal protection violation, [a] plaintiff must allege that a government actor intentionally discriminated against him on the basis of race, national origin, or gender." *Little v. City of New York*, 487 F. Supp. 2d 426, 443 (S.D.N.Y. 2007) (alterations omitted) (quoting *Hayden v. County of Nassau,* 180 F.3d 42, 48 (2d Cir. 1999)). Here, Plaintiffs allege that Defendant Abear and another officer arrested Chisolm-Mitchell without clear reason, while Defendant Abear directed racial slurs at her. (*See* Am. Compl., Dkt. 6, at ECF 9.) "Where it is alleged that police officers investigate solely based upon race, without more, then plaintiff will have stated an actionable claim under the Equal Protection Clause." *Little*, 487 F. Supp. 2d at 443 (citing *Brown v. City of Oneonta,* 221 F.3d 329, 337–38 (2d Cir. 2000)); *see also Ali v. Connick*,

6

136 F. Supp. 3d 270, 279–80 (E.D.N.Y. 2015) ("In the context of claims brought against law enforcement officers, courts in this circuit and elsewhere have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with . . . other unlawful actions, may establish an equal protection violation." (collecting cases)).  While the narrative in the Amended Complaint is not entirely clear and contains a number of gaps, it clearly alleges that Chisolm-Mitchell was arrested and seemingly solely because of her race.  Construing the allegations in the Amended Complaint in the light most favorable to Plaintiffs, it appears to state a valid Equal Protection claim against Defendant Abear as to Chisolm-Mitchell.

### B.     False Arrest Against Defendant Abear

Similarly, the Amended Complaint also states a claim for false arrest as to Chisolm-Mitchell against Defendant Abear.

> Under New York law[10], the elements of a false arrest and false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.  For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause.  Officers have probable cause when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.

*Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (internal quotation marks and citations omitted).

According to the Amended Complaint, Chisolm-Mitchell was arrested against her will, with her knowledge, and at the instruction of Defendant Abear, thus fulfilling the first three

---

[10] "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Case v. City of New York*, 408 F. Supp. 3d 313, 320 (S.D.N.Y. 2019) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted)).

elements of a false arrest claim. *See id*. As to the fourth element, the Amended Complaint includes no facts suggesting that probable cause to arrest Chisolm-Mitchell existed.[11] Thus, the Amended Complaint successfully pleads a false arrest claim against Defendant Abear[12] with respect to Chisolm-Mitchell.

### C.  Conspiracy

Chisolm-Mitchell also appears to allege a Section 1983 conspiracy claim against Defendant Ahmed and the NYPD and/or Defendant Abear.[13]

In order to state a claim for conspiracy under § 1983, "a plaintiff must plead: '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

---

[11] While it is possible that probable cause could have existed based on Chisolm-Mitchell's interruption of her son's interview, the limited facts alleged do not provide information regarding the cause of Chisolm-Mitchell's arrest and/or what, if anything, she was charged with, so as to suggest the existence of probable cause. *See Hernandez*, 939 F.3d at 201–02.

[12] To the extent Chisolm-Mitchell wishes to bring a claim against other members of the NYPD involved in the arrest, she must allege details regarding the involvement of specific other officers. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." (collecting cases)).

[13] The Court notes that neither the NYPD nor the proper suable entity, the City of New York, is named as a defendant in the Amended Complaint. Chisolm-Mitchell may not as a matter of law bring a Section 1983 action against the NYPD, as the New York City Charter requires actions against city agencies to "be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. Since the NYPD is not a suable agency of the City, any suit regarding the conduct of the NYPD must be brought against the City of New York instead. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Williams v. City of New York*, No. 18-CV-921 (ENV) (JO), 2018 WL 4409834, at *3 (E.D.N.Y. Sept. 17, 2018). Here, however, Chisolm-Mitchell has not sued either the NYPD or the City of New York.

causing damages.'" *Brooks v. County of Nassau*, 54 F. Supp. 3d 254, 258–59 (E.D.N.Y. 2014) (quoting *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999)). "While conclusory allegations of a § 1983 conspiracy are insufficient, [the Second Circuit] ha[s] recognized that such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks and citations omitted); *see also Cooper v. City of New York*, No. 17-CV-1517 (NGG) (RLM), 2019 WL 3642996, at *11 (E.D.N.Y. Aug. 5, 2019) ("A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." (alteration and citation omitted)). Chisolm-Mitchell must also "make an effort to provide some details of time and place and the alleged effect of the conspiracy." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003) (internal quotations and citation omitted).

Chisolm-Mitchell alleges that after she reported Defendant Abear to the CCRB, "some[]one" changed her medical records to reflect that she "was a psychological risk" in 2016 in order to exonerate Defendant Abear. (Am. Compl., Dkt. 6, at ECF 10.) The Amended Complaint states that "Doctor Najma Ahmed[] said that she was told by the NYPD to help the officer get exonerated and that [Chisolm-Mitchell] was just a 'n[*****].'"[14] (*Id.*) While these allegations bear certain features of a conspiracy claim in that they involve an agreement between a state actor (the NYPD) and a private entity (Defendant Ahmed) to act in concert to somehow undermine Chisolm-Mitchell's credibility and interfere with her efforts to redress an alleged civil rights

---

[14] As mentioned earlier, the Court infers that Chisolm-Mitchell's claim is that someone at the NYPD made this comment to Dr. Ahmed and not that Dr. Ahmed herself said this to Chisolm-Mitchell.

violation, *see Brooks*, 54 F. Supp. 3d at 258–59, they are largely conclusory and thus insufficient, *see Cooper*, 2019 WL 3642996 at *11.  Chisolm-Mitchell does not allege who from the NYPD had communicated with Defendant Ahmed, which records were changed, or how the change in the records was used to undermine Chisolm-Mitchell's credibility in the CCRB proceeding.  As such, this Section 1983 conspiracy claim fails.

> D. **First Amendment Retaliation**

Similarly, the Amended Complaint fails to plead the necessary details to make out a claim for First Amendment retaliation.

> As a general matter[,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.  If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim.  To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (alteration, internal quotation marks and citations omitted).

The Court assumes that Chisolm-Mitchell's complaint to the CCRB constitutes protected speech.  *See McNaughton v. de Blasio*, No. 14-CV-221 (KPF), 2015 WL 468890, at *11 (S.D.N.Y. Feb. 4, 2015), *aff'd*, 644 F. App'x 32 (2d Cir. 2016) (summary order) (assuming same).  However, Chisolm-Mitchell does not allege specific actions by Defendant Abear in response to the CCRB complaint beyond the general conclusory allegations that the NYPD prompted Defendant Ahmed to alter Chisolm-Mitchell's records.  Nor does Chisolm-Mitchell allege specifics about the harm effected by this action.  Thus, Chisolm-Mitchell fails to state a claim for First Amendment retaliation.

Moreover, to the extent Chisolm-Mitchell seeks to bring a non-conspiracy claim pursuant to a Section 1983 action against Defendant Ahmed, such a claim would be barred as Defendant Ahmed is a private party (notwithstanding Plaintiffs' checking of the "official capacity" box as to Defendant Ahmed in the Amended Complaint). (Am. Compl., Dkt. 6, at ECF 2.) Private actors are not proper parties to §1983 suits when they do not act under the color of state law. *Pitchell*, 13 F.3d at 547. "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks and citation omitted). Here, the Amended Complaint contains no facts suggesting such a nexus between Defendant Ahmed and the NYPD or New York City.

## II.  HIPAA

To the extent that Chisolm-Mitchell is attempting to assert a claim for violation of HIPAA (*see* Am. Compl., Dkt. 6, at ECF 3), for any alleged disclosure or altering of medical information, the claim must be dismissed, as HIPAA does not provide a private right of action, express or implied. *Meadows v. United Services, Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).

## III.  Plaintiff David Chisolm-Mitchell

Because the Amended Complaint does not appear to allege any claims on behalf of or any particular injury to Plaintiff David Chisolm-Mitchell, the Court also finds that he lacks standing to maintain this action. A plaintiff has standing only if he has

> suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (footnote, alterations, internal quotation marks, and citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. The plaintiff must establish "that he has sustained or is immediately in danger of sustaining some direct injury . . . [that is] both real and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (internal quotation marks and citations omitted).

Here, the Amended Complaint appears to allege only harm to Chisolm-Mitchell, who was potentially falsely arrested and possibly subject to a retaliatory conspiracy to alter her records. It does not contain allegations indicating that David himself suffered an injury from the challenged actions of Defendants that affected him in a "personal and individual way." *Lujan*, 504 U.S. at 560 n.1. As such, David lacks standing to pursue this action and must be dismissed as a plaintiff.

## CONCLUSION

Plaintiff Donna Chisolm-Mitchell's request to proceed IFP is granted pursuant to 28 U.S.C. § 1915. Plaintiff David Chisolm-Mitchell is dismissed for lack of standing. Plaintiff Donna Chisolm-Mitchell may proceed with her Section 1983 equal protection and false arrest claims against Defendant Abear. Her conspiracy and First Amendment retaliation claims are dismissed for failure to state a claim, and her HIPAA claim is dismissed because HIPAA does not provide a private right of action. Thus, all claims against Defendant Ahmed are dismissed. However, in light of Chisolm-Mitchell's *pro se* status, the Court grants her leave to file a second amended complaint alleging, if applicable, additional facts regarding her CCRB complaint, specific alterations to her medical records, specific communications from Defendant Ahmed with regard

to what happened to the records, and specifics with regard to the effects the alterations had on the evaluation of the CCRB complaint and on Plaintiff Chisolm-Mitchell's life.[15]

If Plaintiff Chisolm-Mitchell elects to file a second amended complaint, it shall be captioned "SECOND AMENDED COMPLAINT," bear the same docket number as this Order, 20-CV-3434 (PKC) (LB), and must be filed within sixty (60) days from the entry of this Memorandum and Order.  <u>The second amended complaint should contain the facts from the amended complaint in addition to the additional allegations.</u>

If Plaintiff Chisolm-Mitchell does not file a second amended complaint within the time allotted, the amended complaint will proceed only as to the Section 1983 equal protection and false arrest claims against Defendant Abear.  The claims against Defendant Ahmed will be dismissed.

The Court notes that, at this time, it is not ordering the Clerk of Court to prepare a summons against Defendant Abear, nor ordering the United States Marshals Service to serve the Summons and Complaint.  This is to conserve the Court's resources in light of the current COVID-19 pandemic.  The Court shall direct both of those tasks following the deadline for Plaintiff Chisolm-Mitchell to file an amended complaint.

---

[15] The Court exercises its discretion not to permit Plaintiff David another opportunity to amend the complaint as to him, given that neither the original complaint nor the Amended Complaint contained any allegation of injury or harm to him. While district courts ordinarily allow plaintiffs an opportunity to amend their complaints, *see Cruz v. Gomez*, 202 F.3d 593, 597–98 (2d Cir. 2000), they have the discretion to refuse leave to amend where it is clear from the plaintiffs' submissions that any attempt to amend the complaint would be futile, *see Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (noting that leave to amend is futile where barriers to relief cannot be surmounted by reframing the complaint); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to amend a *pro se* complaint where amendment was futile).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore IFP status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 19, 2020
      Brooklyn, New York